**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

UNITED STATES OF AMERICA,

                      Plaintiff,

        v.

BRIDGESTONE AMERICAS TIRE
OPERATIONS, LLC,

LEAR SIEGLER DIVERSIFIED
HOLDINGS CORP., and

FERODO AMERICA, LLC,

                    Defendants.

Civil Action No. 1:22-cv-1647

## COMPLAINT

Plaintiff, the United States of America, by the authority of the Attorney General of the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and by and through its undersigned attorneys, alleges that:

### NATURE OF THE ACTION

1.     This is a civil action brought against Defendants Bridgestone Americas Tire Operations LLC, Lear Siegler Diversified Holdings Corp., and Ferodo America, LLC, (collectively, the "Defendants") pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607. The United States seeks to recover unreimbursed costs incurred for response activities undertaken in response to the release and threatened release of a hazardous substance, asbestos, at and from the New Castle Asbestos Site (the "Site"), located at 1112 South 25th Street in New Castle, Indiana. The United States also seeks a declaratory judgment that the Defendants are

liable for future response costs that the United States may incur in connection with response actions that may be performed at the Site.

2.     The United States also seeks interest from the Defendants, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action and the Defendants pursuant to 28 U.S.C. §§ 1331 and 1345 because this is a civil action commenced by the United States that arises under the laws of the United States.  This Court has exclusive original jurisdiction over this action pursuant to Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b), because it concerns controversies arising under CERCLA.

4.     Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. Section 1391(b) and (c) because the claims arose and the threatened and actual releases of a hazardous substance occurred in this district.

## BACKGROUND ON THE SITE AND THE STATUTE

5.     The Site is located in a mixed residential, commercial, and light industrial area.  It includes approximately 9.34 acres of land that was once occupied by a car parts manufacturing facility owned and operated successively by legal predecessors of the Defendants.

6.     Asbestos was used in the manufacture of automotive products at the facility until approximately 1988.

7.     Brake shoe manufacturing at the facility resulted in the generation of waste brake shoe dust, which contained asbestos.  This dust spread throughout the main manufacturing building and to grounds outside the building.

8.      As confirmed by a promotional video produced in the 1950's by World Bestos Company, a division of the Firestone Tire and Rubber Company that operated at the Site, asbestos comprised about half of a typical brake lining compound made by the company.  *See* https://youtu.be/eugWRMfycss.

9.      Building materials used in structures at the Site also contained asbestos.

10.      In April 2012, there was a large fire inside a vacant building on the property. As a result of the fire, the building was demolished, and demolition debris was left in piles on the property.

A.      **Response Activities by the United States**

11.      On May 7-8, 2013, EPA performed a site assessment to determine if asbestos was present at the Site.  EPA collected samples from 22 large piles of debris for laboratory analysis. EPA's sampling results indicate the presence of asbestos within 12 of the 22 debris piles at the Site.

12.      An EPA On-Scene Coordinator observed fragments of brake parts in one of the debris piles during the site assessment.

13.      A diagram of the Site, with the location of debris piles, outlined in orange and identified by their number, is included below.



14.     Between November 2016 and May 2017, an EPA contractor completed additional

assessment work at the Site, which included sampling and analysis of multiple whole and

crumbled brake pads scattered across a gravel path and an overgrown area on about two acres of

the southeastern side of the Site.

　　　　a.     In addition to observing brake pad debris on the surface of the ground,

　　　　EPA uncovered additional, buried brake pad debris after performing a 6-inch soil scrape

　　　　of the area.

　　　　b.     The EPA contractor's analysis found that the brake pad samples contained

　　　　from 10%-50% chrysotile asbestos.

4

c.      The EPA contractor's analysis also found that the asbestos in many of the brake pad samples had become friable with age because the material had started to degrade with exposure to the elements.

15.      Asbestos is classified as a "hazardous substance" under CERCLA.  *See* 42 U.S.C. §§ 9601(14), 9602(a); 40 C.F.R. § 302.4.

16.      EPA determined that the presence of uncontrolled asbestos-containing material at the Site necessitated a time critical removal action.

17.      During the removal action, which occurred between May and July 2017, EPA excavated and disposed of debris piles, whole and crumbled brake pads, contaminated soils, and pits containing asbestos-containing material.  In total, EPA removed approximately 6,928 tons of asbestos-contaminated material and transported it off-Site for disposal.

18.       The City of New Castle took title to the Site in 2015 and currently controls the property. EPA is considering whether any further federal action is necessary.

**B.      Response Costs**

19.      CERCLA Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), authorizes the United States to recover costs that it incurs in response to the release and threatened release of hazardous substances, to the extent such costs are not inconsistent with the National Contingency Plan ("NCP").

20.      CERCLA Section 107(a), 42 U.S.C. § 9607(a), imposes liability for response costs on certain classes of potentially responsible parties ("PRPs"), including parties that owned or operated a facility at the time of disposal of a hazardous substance.

21.      CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), provides, in pertinent part: "In any such action [for recovery of costs] . . . , the court shall enter a declaratory judgment on

liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

22. EPA incurred costs in connection with response actions at the Site, including the actions described above.

23. As of September 2020, EPA has incurred at least $1,981,664.43 in unreimbursed response costs associated with the Site.

24. The above-referenced response costs incurred by the United States qualify as costs of "response" and "costs of removal or remedial action incurred by the United States Government" under CERCLA Sections 101(25) and 107(a)(4)(A), 42 U.S.C. §§ 9601(25) and 9607(a)(4)(A).

25. The United States incurred the above-referenced response costs in a manner not inconsistent with the NCP.

26. The United States may continue to incur response costs associated with the Site.

27. The amounts recoverable in an action under CERCLA Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), include statutory prejudgment interest on the response costs. Such interest accrues from the later of: (i) the date that payment of a specified amount is demanded in writing or (ii) the date of the expenditure concerned.

28. The United States made a written demand for payment of a specified amount of unreimbursed response costs in a May 13, 2020 correspondence addressed to representatives of each of the Defendants.

## GENERAL ALLEGATIONS AND ALLEGATIONS RELATING TO THE DEFENDANTS

29. The Site is a "facility," within the meaning of CERCLA §§ 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

30.     There have been "releases" and "threatened releases" of asbestos at the Site which have caused the incurrence of response costs by EPA, within the meaning of CERCLA §§ 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a).

**A.     Corporate History of Bridgestone Americas Tire Operations LLC**

31.     Bridgestone Americas Tire Operations LLC ("Bridgestone Americas") is a "person" within the meaning of CERCLA §§ 101(21), 42 U.S.C. § 9601(21).

32.     Bridgestone Americas is a legal successor to a predecessor in interest that was an "owner" and/or "operator" of the Site at the time of disposal of asbestos at the Site, within the meaning of CERCLA §§ 101(20)(A) and 107(a)(2), 42 U.S.C. §§ 9601(2)(A), 9607(a)(2), as described further below.

33.     Bridgestone Americas is a corporate successor to an Ohio predecessor corporation known as The Firestone Tire & Rubber Company ("Firestone Tire & Rubber").

        a.     Firestone Tire & Rubber was formed in 1900 and incorporated in the State of Ohio in 1910.

        b.     In 1989, Firestone Tire & Rubber changed its name to Bridgestone/Firestone, Inc.

        c.     In 2001, Bridgestone/Firestone, Inc. was merged into a Delaware limited liability company known as Bridgestone/Firestone North American Tire, LLC.

        d.     In 2008, Bridgestone/Firestone North American Tire, LLC changed its name to Bridgestone Americas Tire Operations LLC.

34.     Bridgestone Americas is a corporate successor to an Indiana predecessor corporation known as Firestone Industrial Products Company, Inc. ("Firestone Industrial Products").

a.      Firestone Industrial Products was organized in 1937 under the laws of the State of Indiana.

b.      Firestone Industrial Products was a wholly owned direct or indirect subsidiary of Firestone Tire & Rubber.

c.      Firestone Industrial Products operated as a division of Firestone Tire & Rubber.

d.      Firestone Industrial Products was liquidated in 1947 and all of its assets and property were transferred to Firestone Tire & Rubber.

e.      Upon or before the liquidation of Firestone Industrial Products, Firestone Tire & Rubber assumed all liabilities associated with the prior business of Firestone Industrial Products. (The connection between Firestone Tire & Rubber and Bridgestone Americas is described in the prior paragraph.)

35.      Bridgestone Americas is a corporate successor to a predecessor corporation known as World Bestos Corporation ("World Bestos").

a.      In 1938, World Bestos was acquired by Firestone Tire & Rubber, and World Bestos became a wholly owned direct or indirect subsidiary of Firestone Tire & Rubber.

b.      After being acquired by Firestone Tire & Rubber, World Bestos operated as a division of Firestone Tire & Rubber.

c.      By the 1960s, World Bestos was liquidated and all assets and property of World Bestos were transferred to Firestone Tire & Rubber.

d.      Upon or before the liquidation of World Bestos, Firestone Tire & Rubber assumed all liabilities associated with the prior business of World Bestos. (The

connection between Firestone Tire & Rubber and Bridgestone Americas is described in Paragraph 33.)

36.      When World Bestos was acquired by Firestone Tire & Rubber in 1938, World Bestos made asbestos-containing brake lining at a single plant located in Patterson, New Jersey.

37.      Firestone Industrial Products purchased the Site property in New Castle, Indiana, in 1942.

38.      In 1942, the World Bestos asbestos-containing brake lining production operations in Patterson, New Jersey, were moved to the Site property in New Castle, Indiana.

39.      All asbestos-containing brake lining production operations of Firestone Tire & Rubber's World Bestos division were conducted at the Site property until Firestone Tire & Rubber sold the Site property and all other assets of its World Bestos division to Royal Industries, Inc. in February 1975.

**B.      Corporate History of Lear Siegler Diversified Holdings Corp.**

40.      Lear Siegler Diversified Holdings Corp. ("Lear Siegler") is a "person" within the meaning of CERCLA §§ 101(21), 42 U.S.C. § 9601(21).

41.      Lear Siegler is a legal successor to a predecessor in interest that was an "owner" and/or "operator" of the Site at the time of disposal of asbestos at the Site, within the meaning of CERCLA §§ 101(20)(A) and 107(a)(2), 42 U.S.C. §§ 9601(2)(A), 9607(a)(2).

42.      Lear Siegler, Inc. was incorporated in Delaware on December 21, 1950.

43.      In February 1975, Royal Industries, Inc. purchased the New Castle Site property and all other assets of the World Bestos division from Firestone Tire & Rubber. The World Bestos business was subsequently operated as a division of Royal Industries, Inc.

44.     In 1977, Lear Siegler, Inc. acquired all of the outstanding stock of Royal Industries, Inc., and Royal Industries, Inc. became a wholly-owned subsidiary of Lear Siegler, Inc.

45.     In 1979, Royal Industries, Inc. was merged into Lear Siegler, Inc.

46.     In August 1979, Lear Siegler, Inc. sold the assets of the World Bestos division to Nuturn Corporation and Manchester Realty Company, Inc.

47.     Lear Siegler Diversified Holdings Corp. was incorporated in Delaware on January 23, 1987.

48.     In February 1987, Lear Siegler, Inc. was merged out of existence. The liabilities relating to the former World Bestos division were transferred to Lear Siegler Diversified Holdings Corp.

49.     On July 26, 2018, Lear Siegler Diversified Holdings Corp. filed a Certificate of Dissolution in Delaware.

**C.     Corporate History of Ferodo America, LLC**

50.     Ferodo America, LLC ("Ferodo") is a "person" within the meaning of CERCLA §§ 101(21), 42 U.S.C. § 9601(21).

51.     Ferodo is a legal successor to a predecessor in interest that was an "owner" and/or "operator" of the Site at the time of disposal of asbestos at the Site, within the meaning of CERCLA §§ 101(20)(A) and 107(a)(2), 42 U.S.C. §§ 9601(2)(A), 9607(a)(2)

*Ferodo's Early History*

52.     Ferodo is a corporate successor to a Delaware predecessor corporation named Nuturn Corporation ("Nuturn") and a Delaware predecessor named Manchester Realty Company, Inc. ("Manchester Realty").

     a.     Nuturn was incorporated in Delaware in 1977.

10

b.      In August 1979, a corporate successor to Royal Industries, Inc. sold the assets of its World Bestos division – including the Site property – to Nuturn and Manchester Realty.  In that transaction, Manchester Realty acquired the Site property and Nuturn acquired the other assets of the World Bestos asbestos-containing brake lining production business. In 1984, Manchester Realty merged with Nuturn.

c.      In 1991, Nuturn changed its name to Ferodo America, Inc.

d.      In 1998, Federal-Mogul Corporation ("Federal-Mogul") acquired control of Ferodo America, Inc., and Ferodo America, Inc. became an indirect subsidiary of Federal-Mogul.

e.      In 2003, Ferodo America, Inc. sold the Site property to the Henry County Redevelopment Commission.

f.      In 2017, Ferodo America, Inc. was converted to a Delaware limited liability company named Ferodo America, LLC.

53.      Ferodo's corporate predecessor – Nuturn – manufactured asbestos-containing brake linings at the Site from 1979 until at least 1988.

*The Federal-Mogul Bankruptcy*

54.      Federal-Mogul and certain of its subsidiaries, including Ferodo America, Inc., ("the Debtors"), filed a petition for bankruptcy on October 1, 2001.

55.      As part of the bankruptcy process, on December 1, 2004, the Debtors entered into an Environmental Settlement Agreement that allows the United States to bring CERCLA claims against the Debtors for their acts and omissions predating the petition for bankruptcy.

56.      The Environmental Settlement Agreement provides that the Debtors are required to pay response costs at Sites like this one if a claim for response costs is liquidated by a settlement or judgment to a determined amount.

57.     In the event of such a liquidation of claims, the responsible Debtor must pay the response costs as if they had been an unsecured claim in the bankruptcy: at 35 cents on the dollar.

**D.      Disposal of Asbestos by Bridgestone Americas, Lear Siegler, and Ferodo**

58.     The National Institute for Occupational Safety and Health ("NIOSH") performed air sampling for asbestos at the facility in 1969 and 1971, when it was owned and operated by Firestone Tire & Rubber.

59.     The 1971 sampling found that average asbestos exposures in the dry mixing, wet mixing, block preforming, sheet preforming, mercury clutch preforming, finish grinding, sanding, multiple drill operator, transmission band inspection, and dry mix inspection areas exceeded the NIOSH standard.

60.     In February 1974, OSHA issued a citation to Firestone Tire & Rubber for failure to maintain employees' exposures to asbestos dust below the NIOSH standard.

61.     In January 1984, NIOSH received a request for a Health Hazard Evaluation from Nuturn to evaluate workers' exposures to asbestos during the manufacture of brake shoe linings. NIOSH conducted an evaluation in June 1984 and documented asbestos in numerous air samples, concluding that a health hazard existed.

62.     Federal-Mogul commissioned a Phase I environmental investigation in August 1999 in preparation for a potential sale of the Site property.

63.     The report on that 1999 Phase I environmental investigation noted that:

Asbestos was an ingredient of the brake shoes and other friction products manufactured at the facility until the late 1980s.  For example, Nuturn reported to the EPA that they consumed 1,926 tons of Chyrsotile asbestos in 1980 and 2,394 tons in 1981.  The asbestos content of brake shoe dust during this period was estimated at approximately 50 percent.

64.     The 1999 Phase I investigation report found that "Brake shoe manufacturing at the facility resulted in the generation of waste brake shoe dust" and that that brake shoe dust had components of asbestos prior to 1988.

65.     The report also noted that the brake shoe dust "was observed throughout the main manufacturing building . . . and in areas on the ground outside the buildings."

66.     The report further found "Scrap brake shoes and other debris . . ." in the "coal pile" area in the north east corner of the facility. The report continued that "[t]opography in the area and disturbed earth in a 1961 aerial photograph suggest that fill has been placed in this area."

67.     Federal Mogul also commissioned an asbestos abatement action at the Site in 2000.

68.     Work logs from Federal Mogul's asbestos abatement report, dated October 2000, describe "visible dust clouds" from power-washed asbestos-containing pipes "blowing outside" from the facility as a result of asbestos abatement activities.

*Disposal of Asbestos by Bridgestone Americas*

69.     On information and belief, the former production building at the Site (and its ventilation systems) discharged asbestos dust from Firestone Tire & Rubber's brake lining manufacturing operations within the production building and to outside areas at the Site.

70.     On information and belief, Firestone Tire & Rubber also disposed of unsalable asbestos-containing brake linings in pits, piles, and other areas at the Site.

71.     One or more corporate predecessors of Bridgestone Americas therefore "disposed" of asbestos-containing materials at the Site while owning or operating the brake lining manufacturing facility at the Site, within the meaning of CERCLA §§ 101(29) and 107(a)(2), 42 U.S.C. §§ 9601(2), 9607(a)(2).

*Disposal of Asbestos by Lear Siegler*

72.     On information and belief, the former production building at the Site (and its ventilation systems) discharged asbestos dust from Royal Industries' and Lear Siegler, Inc.'s brake lining manufacturing operations within the production building and to outside areas at the Site.

73.     On information and belief, Royal Industries and Lear Siegler, Inc. also disposed of unsalable asbestos-containing brake linings in pits, piles, and other areas at the Site.

74.     One or more corporate predecessors of Lear Siegler Diversified Holdings Corp. therefore "disposed" of asbestos-containing materials at the Site while owning or operating the brake lining manufacturing facility at the Site, within the meaning of CERCLA §§ 101(29) and 107(a)(2), 42 U.S.C. §§ 9601(2), 9607(a)(2).

*Disposal of Asbestos by Ferodo*

75.     On information and belief, the former production building at the Site (and its ventilation systems) discharged asbestos dust from Nuturn's operations within the production building and to outside areas at the Site.

76.     On information and belief, Nuturn also disposed of unsalable asbestos-containing brake linings in pits, piles, and other areas at the Site.

77.     One or more corporate predecessors of Ferodo Americas therefore "disposed" of asbestos-containing materials at the Site while owning or operating the brake lining manufacturing facility at the Site, within the meaning of CERCLA §§ 101(29) and 107(a)(2), 42 U.S.C. §§ 9601(2), 9607(a)(2).

**FIRST CLAIM FOR RELIEF**

(Cost Recovery under CERCLA Section 107, 42 U.S.C. § 9607)

78.     Paragraphs 1 through 77 above are realleged and incorporated herein by reference.

79.     Defendants, as successors to their predecessors in interest, are jointly and severally liable to the United States for all unreimbursed response costs incurred by the United States in connection with the Site pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a).

## SECOND CLAIM FOR RELIEF

(Declaratory Judgment for Recovery of Further Response Costs by the United States)

80.     Paragraphs 1 through 77 above are realleged and incorporated herein by reference.

81.     Each of the Defendants is liable to the United States for any unreimbursed further response costs that the United States incurs in connection with releases of hazardous substances at the Site, not inconsistent with the NCP, pursuant to CERCLA §§ 107(a) and 113(g)(2), 42 U.S.C.  §§ 9607(a) and 9613(g)(2), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

1.     Enter judgment in favor of the United States and against the above-named Defendants, jointly and severally, for all response costs incurred by the United States, as well as prejudgment interest, for response actions in connection with the Site;

2.     Enter a declaratory judgment in favor of the United States and against the above-named Defendants for any unreimbursed further response costs that the United States incurs in connection with the Site, not inconsistent with the NCP;

3.     Award the United States the costs of this action; and

4.      Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,

Todd Kim
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

_____
Pedro Segura, Trial Attorney
United States Department of Justice
Environmental Enforcement Section
Environment & Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
(202) 532-3153
Pedro.Segura@usdoj.gov

Zachary A. Meyers
United States Attorney
Southern District of Indiana

J. Taylor Kirklin
Assistant United States Attorney
United States Attorney's Office
10 W Market St, Suite 2100
Indianapolis, IN 46204
taylor.kirklin@usdoj.gov

OF COUNSEL:

Adam Mittermaier
Assistant Regional Counsel
U.S. EPA - Region 5
77 West Jackson Blvd.
Chicago, Illinois 60604
mittermaier.adam@epa.gov

16

## **CERTIFICATE OF SERVICE**

In accordance with Paragraph 36 of the Consent Decree signed by Lear Siegler Diversified Holdings Corp., I certify that on this date I caused copies of the foregoing Complaint to be served on the following individuals by electronic mail:

For Lear Siegler Diversified Holdings Corp.:
James F. Matthews
Former President, Lear Siegler Diversified Holdings Corp.
1402 Bellezza Lane
Naples, FL, 34110
LSDHC1997@gmail.com

In accordance with Paragraph 39 of the Consent Decree with Bridgestone Americas Tire Operations, LLC and Ferodo America, LLC, I certify that on this date I caused copies of the foregoing Complaint to be served on the following individuals by mail and electronic mail:

For Ferodo America, LLC:
Mary Ellen Hogan
Associate General Counsel, Environmental Health Safety & Security
Tenneco
7450 N. McCormick Blvd.
Skokie, IL, 60076
MHogan@driv.com

For Bridgestone Americas Tire Operations, LLC:
David Dumas
Associate General Counsel, Legal Recoveries and Environmental Litigation
Bridgestone Americas, Inc.
200 4th Avenue South
Nashville, TN, 37201
DavidDumas@bfusa.com

Dated: August 19, 2022

Pedro Segura, Trial Attorney
United States Department of Justice
Environmental Enforcement Section
Environment & Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
(202) 532-3153
Pedro.Segura@usdoj.gov