IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | |
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, | Civil Action No. 1:22-cv-1647 |
| LEAR SIEGLER DIVERSIFIED HOLDINGS CORP., and | |
| FERODO AMERICA, LLC, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF UNITED STATES' UNOPPOSED MOTION TO ENTER PROPOSED CONSENT DECREES**

**INTRODUCTION**

The United States submits this brief in support of its uncontested motion for approval and entry of two proposed Consent Decrees that were lodged in this case on August 19, 2022 (ECF No. 3-1; 3-2). The Consent Decrees would require the defendants to reimburse costs that the U.S. Environmental Protection Agency ("EPA") incurred for environmental cleanup-related activities at the New Castle Asbestos Site in Henry County, Indiana. If approved and entered by this Court, the Consent Decrees would conclude this case on the terms set forth in the decrees, which are standard agreements for a case like this arising under the government cost recovery provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

Consistent with its established policy, the Department of Justice published notice of these proposed Consent Decrees in the *Federal Register* and solicited public comment during a 30-day

1

period that expired on September 26, 2022. *See* 87 Fed. Reg. 52,418 (Aug. 25, 2022). No comments were received. The three defendants in this case have signed the proposed Consent Decrees[1] and support their approval and entry as a final judgment in this case.[2]

The information presented in this brief demonstrates that the proposed Consent Decrees meet the well-established standard for judicial approval of a CERCLA settlement negotiated by the federal government: it is fair, reasonable, and consistent with the goals of that statute. *See United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011) ("[T]he district court must approve a consent decree if it is reasonable, consistent with CERCLA's goals, and substantively and procedurally fair.").

Section 1 of this brief provides background information on the proposed settlement. Section 2 summarizes the legal standards that govern judicial review and approval of a CERCLA consent decree negotiated by the federal government. Section 3 shows that the proposed Consent Decrees meet those standards for approval and should be entered by the Court.

1. **BACKGROUND**

The United States' complaint seeks recovery of EPA's past response costs for the cleanup of the New Castle Asbestos Site in New Castle, Henry County, Indiana ("the Site") under Sections 106 and 107 of the CERCLA, 42 U.S.C. §§ 9606 and 9607. Predecessors-in-interest of

---

[1] Bridgestone Americas Tire Operations, LLC ("BATO") and Ferodo America, LLC ("Ferodo") co-signed one consent decree. ECF No. 3-1 (hereinafter referred to as "BATO/Ferodo Consent Decree"). Lear Siegler Diversified Holdings Corp. (Lear Siegler), individually, signed another consent decree. ECF No. 3-2 (hereinafter referred to as "Lear Siegler Consent Decree").

[2] Upon signing the proposed Consent Decree, each defendant confirmed its "consent to the entry of this Consent Decree" and "agree[d] not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree." ECF No. 3-1 at PageID #46 (BATO/Ferodo Consent Decree ¶ 38); ECF No. 3-2 at PageID #70 (Lear Siegler Consent Decree ¶ 35).

each Defendant owned and operated a brake-part manufacturing facility at the Site, which for decades manufactured asbestos-containing brake parts. During its operation, the facility caused asbestos contamination at the Site because asbestos-containing brake parts were disposed of on the ground outside the manufacturing buildings. EPA addressed the contamination through a time-critical removal action that ended in 2017. EPA incurred over $1.9 million in response costs.

The proposed Consent Decrees would resolve these CERCLA claims on agreed terms and conditions, without active litigation. Under the proposed Consent Decrees, Defendants will collectively pay $850,000 of EPA's past response costs (BATO: $425,000; Ferodo: $275,000; Lear Siegler: $150,000). The non-monetary terms are standard and based largely on EPA's published Model CERCLA Section 107 Consent Decree for Recovery of Past Response Costs, posted at https://cfpub.epa.gov/compliance/models/view.cfm?model_ID=385.

2. **STANDARD OF REVIEW**

As the Supreme Court has recognized:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms . . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation.

*United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971).[3] The Seventh Circuit cited similar considerations in affirming a district court's approval of a consent decree in another environmental enforcement action brought by the United States:

---

[3] *Accord United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011) ("By its nature, a consent decree eliminates many possible outcomes that would have been better for one side or the other."); *United States v. Metro. Water Reclamation Dist. of Greater Chicago*, 792 F.3d 821, 824 (7th Cir. 2015) ("A consent decree is at base a contract" that embodies an agreed compromise of litigation.).

> Even the most diligent litigator may conclude that settlement is the best option – if only because it frees up enforcement resources for use elsewhere – and to achieve a settlement a litigant must accept something less than its most favored outcome.

*United States v. Metro. Water Reclamation Dist. of Greater Chicago*, 792 F.3d 822, 825 (7th Cir. 2015).

In judging a proposed consent decree that would settle a case like this, a district court should approve the settlement if the government shows that it is fair (both procedurally and substantively), reasonable, and consistent with the goals of the applicable law. *See Whiting Paper*, 644 F.3d at 372.

A court should afford any such settlement "considerable deference" where, as here, it has been "negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." *United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 907 (E.D. Wis. 2004) (citations and internal quotations omitted). As the Seventh Circuit has noted, that deference recognizes both EPA's "expertise" and the "federal policy encouraging settlement." *Whiting Paper*, 644 F.3d at 372.[4] Thus, in the final analysis, "[t]he test is not whether this court would have fashioned the same remedy nor whether it is the best possible settlement." *United States v. BP Expl. & Oil Co.*, 167 F. Supp. 2d 1045, 1050 (N.D. Ind. 2001).[5]

---

[4] *Accord Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985) (recognizing a "presumption in favor of approving" a consent decree negotiated by the Department of Labor in light of "the limitations of judicial competence and the desirability of encouraging out-of-court settlements in order to lighten the judicial caseload"); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("the policy of the law to encourage settlements . . . has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement.").

[5] An evidentiary hearing is *not* required in order to evaluate a proposed settlement of an environmental enforcement action. *See United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1085 (1st Cir. 1994) ("[R]equests for evidentiary hearings are, for the most part, routinely

3. **THE PROPOSED CONSENT DECREES MEET THE STANDARDS FOR JUDICIAL APPROVAL.**

The United States has not received any comments or objections to the Consent Decrees in response to its invitation for public comment. Moreover, the Court should enter the Consent Decrees because they are fair, reasonable, and consistent with CERCLA.

A. **The Settlement Was Reached through a Fair Negotiation Process.**

The fairness inquiry addresses both procedural and substantive fairness. *See United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990). "Procedural fairness concerns the negotiations process, i.e., whether it was open and at arms-length." *United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 907 (E.D. Wisc. 2004) (citing *Cannons Eng'g Corp.*, 899 F.2d at 86). The Consent Decrees are procedurally fair because they reflect the agreement of the parties after good faith settlement negotiations that took place over a two-year period during which Defendants were represented by competent counsel. *See United States v. Akzo Coatings of America, LLC*, 949 F.2d 1409, 1435 (6th Cir. 1991) (holding that, to determine fairness, courts evaluate "the strength of plaintiff's case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved").

Substantive fairness, which concerns "concepts of corrective justice and accountability," typically comes into play in multiple-party environmental matters when non-settlors object that a settlement leaves them too large a share of liability. *Cannons Eng'g Corp.*, 899 F.2d at 87. In this case, there are no other identified potentially liable parties who have asserted that the settlement leaves them potentially liable for a disproportionate amount of the United States' response costs. As such, the Consent Decrees are substantively fair.

---

denied – and properly so – at the consent decree stage in environmental cases."); *accord United States v. Metro. St. Louis Sewer Dist.*, 952 F.2d 1040 (8th Cir. 1992).

### B.   The Settlement Is Substantively Fair, Reasonable, and Consistent with the Purposes of CERCLA.

"Substantive fairness concerns concepts of corrective justice and accountability." *United States v. Wisconsin Elec. Power Co.*, 522 F. Supp. 2d 1107, 1112 (E.D. Wisc. 2007); *BP Expl. & Oil Co.*, 167 F. Supp. 2d at 1049. In assessing an environmental settlement's reasonableness and consistency with law, "one of the most important considerations . . . is the decree's likely effectiveness as a vehicle for cleansing the environment." *United States v. Lexington-Fayette Urban Cty. Gov't.*, 591 F.3d 484, 489 (6th Cir. 2010) (internal quotations omitted). To put a finer point on it, a settlement should include appropriate relief chosen from among the "realistically available options" to target the particular issues raised in the lawsuit. *Metro. Water Reclamation Dist. of Greater Chicago*, 792 F.3d at 827.

As noted above, the Complaint and the proposed Consent Decrees here focus on the need for reimbursement of costs borne by EPA during its time critical removal action at the Site. Cost recovery cases like this are an important facet of EPA's CERCLA enforcement and cleanup program, because monetary recoveries in these cases are re-deposited in the Congressionally-established "Hazardous Substance Superfund" and then used to fund EPA response actions at other contaminated sites. *See* 26 U.S.C. § 9507; *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1500 (6th Cir. 1989) (recognizing CERCLA's emphasis on "placing the ultimate financial responsibility for cleanup on those responsible for hazardous wastes" because "the recovered funds are used to replenish the Superfund") (citation and internal quotation omitted).

In this case, the proposed Consent Decrees are reasonable, and are preferable to litigation, because Defendants will pay a substantial amount of EPA's past response costs incurred at the Site. While EPA incurred approximately $1.9 million in response costs at the Site, a compromise at $850,000 is justified. Ferodo's liability is governed by the Confirmed Plan and Environmental

Settlement Agreement in the Bankruptcy that limits the United States' recovery against Ferodo to 35% of EPA's response costs. *See* Fourth Amended Joint Plan of Reorganization, *in Re Federal Mogul Global, Inc., T &N Limited,* Case No. 01-10578 ECF No. 13649 (Bank. Del. November 5, 2007). Lear Siegler is a dissolved corporation that has exited its winding up period. There is no certainty that the United States would obtain a better outcome if the claims in the Complaint were litigated to judgment. The defendants raised potentially viable defenses to the claims for some of EPA's costs during the settlement negotiations. On balance, the proposed settlement represents a fair and reasonable agreed alternative to a litigated resolution, especially because it avoids the added costs, risks, and delays of litigation.

## **CONCLUSION**

For the reasons set forth in this brief, the United States respectfully submits that the proposed Consent Decrees are fair, reasonable, and consistent with CERCLA, and, therefore, requests that the Court grant the underlying Motion by approving and entering the proposed Consent Decrees as final judgments. Each Consent Decree contains a signature block for the Court: page 21 of the BATO/Ferodo Consent Decree and page 18 of the Lear Siegler Consent Decree.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Date: October 3, 2022 | TODD KIM<br>Assistant Attorney General<br>Environment & Natural Resources Division |
|  |  |
|  | /s/ Pedro Segura |
| *OF COUNSEL*<br>ADAM MITTERMAIER<br>Associate Regional Counsel<br>U.S. EPA Region 5<br>Chicago, IL<br>77 W. Jackson Blvd. | PEDRO SEGURA<br>Trial Attorney<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>Environmental Enforcement Section<br>P.O. Box 7611<br>Washington, D.C. 20044-7611 |
|  | ZACHARY A. MEYERS<br>United States Attorney<br>Southern District of Indiana |
|  | J. TAYLOR KIRKLIN<br>Assistant United States Attorney<br>United States Attorney's Office<br>10 W Market St, Suite 2100<br>Indianapolis, IN 46204<br>taylor.kirklin@usdoj.gov |

Certificate of Service

I hereby certify that on October 3, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system and electronically served a copy upon counsel for Defendants by email.

/s/ Pedro Segura
PEDRO SEGURA
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611